UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE CO.,<br><br>Plaintiff,<br><br>v.<br><br>DAVID M. OLIVER, JAMES W. OLIVER, BARBARA FORTH, CAROL LEE OLIVER, PAUL R. WEBB, III, and THOMAS J. WEBB, Individually and as Executor of the Estate of Paul R. Webb, II,<br><br>Defendants. | Civil Action No. 20-cv-10479-IT |

Memorandum and Order

October 16, 2020

TALWANI, D.J.

I. Introduction

Pending before this court in this action in interpleader is Defendant James Oliver's Motion to Transfer Venue [#42] to the United States District Court for the Northern District of New York and Defendants Paul R. Webb, III, and Thomas J. Webb's Motion to Transfer Venue [#50] to the United States District Court for the Middle District of Florida. For the reasons that follow, the Motion to Transfer Venue [#42] to the Northern District of New York is GRANTED and the Motion to Transfer Venue [#50] to the Middle District of Florida is DENIED.[1]

II. Procedural History

Metropolitan Life Insurance Company ("MetLife") brought this action to resolve a dispute between Defendants David Oliver, James Oliver, Barbara Forth, and Carol Lee Oliver

---

[1] Because the court is granting the Motion to Transfer Venue [#42], the court declines to rule on subsequently filed motions other than the competing Motion to Transfer Venue [#50].

("Oliver Defendants") and Paul Webb, III, and Thomas J. Webb[2] ("Webb Defendants") over life insurance benefits payable under the terms of decedent Paul Webb, II's ("Decedent") MetLife-insured employee benefit plan established and maintained by General Electric. Complaint ¶¶ 1, 12, 23 [#1]. MetLife alleges that James Oliver has asserted that a December 15 Beneficiary Designation is invalid because the Decedent was incompetent and lacked the capacity to execute it or was unduly influenced to execute it by Thomas Webb. Id. ¶ 24. MetLife states that if a court determines that the December 2015 Beneficiary Designation is valid, then the Plan Benefits would be payable to the Webb Defendants. Id. ¶ 25. MetLife alleges further that if the December 2015 Beneficiary Designation is not valid, then the Plan Benefits may be payable to the Oliver Defendants based on an April or June 2014 Beneficiary Designation. Id. ¶ 26.

The Oliver Defendants, proceeding *pro se*, have each filed nearly identical answers and crossclaims. See Am. Answer and Crossclaim of James Oliver [#37]; Am. Answer and Crossclaim of Carol Oliver [#38], Am. Answer and Crossclaim of Barbara Oliver Forth [#39], Answer and Crossclaim of David Oliver [#40].[3] The Oliver Defendants seek a declaratory judgment concerning the life insurance benefits, alleging that the Decedent's December 2015 Insurance Beneficiary Designation (naming the Webb Defendants) is invalid as the result of undue influence exerted by the Webb Defendants and because the Decedent was not competent to alter his June 2014 Designation (naming the Oliver Defendants). See e.g. Am. Answer and Crossclaim of James Oliver ¶¶ 81-84 [#37].[4]

---

[2] Thomas J. Webb is named individually and as executor of the Decedent's estate.

[3] Because James Oliver filed the Motion to Transfer Venue [#42], the court hereafter primarily refers to allegations made in his Amended Answer and Crossclaim [#37] for clarity.

[4] The Oliver Defendants also allege defamation by the Webb Defendants relating to letters each man wrote to MetLife asserting that the Olivers misspent approximately $100,000 of the Decedent's money prior to his death. See e.g. Am. Answer and Crossclaim of James Oliver ¶¶ 85-106 [#37]. The Webb Defendants have moved to dismiss these defamation claims. Motion

The Webb Defendants have also answered MetLife's Complaint, and have filed a crossclaim for a declaratory judgment that the Decedent's December 2015 Insurance Beneficiary Designation is valid. Answer and Crossclaim ¶¶ 33-35 [#26].[5]

The parties subsequently stipulated to MetLife depositing the contested funds and applicable interest with the court where they would remain pending further order, and to MetLife's subsequent dismissal from this action with prejudice. Stipulation [#92]. The court endorsed the Stipulation [#93], but funds have not yet been deposited.

III. Background

    A. Defendants and their Relationships to the Decedent

Paul Webb, III, and Thomas J. Webb are the Decedent's children with his wife Marion Webb, who died in 1992. Answer and Crossclaim of Webb Defendants ¶ 11 [#26]; Am. Answer and Crossclaim of James Oliver ¶ 10 [#37]. David Oliver, James Oliver, Barbara Forth, and Carol Lee Oliver are the Decedent's step-children; the Decedent was married to the Oliver Defendants' mother, Anne Oliver (referred to at times as Anne Webb), from 1995 until her death in March 2014. Answer and Crossclaim of Webb Defendants ¶¶ 12, 14 [#26]; Am. Answer and

---

to Dismiss Count Two and Three of Crossclaim filed by Olivers [#49]. The motion remains pending.

[5] The Webb Defendants also bring a crossclaim against each of the Oliver Defendants for intentional interference with an inheritance expectancy because they "asserted their own claim for the Life Insurance Benefit by submitting false and fraudulent information to MetLife that the Cross-Plaintiffs had unduly influenced their father and that the Decedent had no capacity when he executed his 2015 Beneficiary Designation," such that the June 13, 2014 Designation benefitting Oliver Defendants would be operative. Answer and Crossclaim ¶¶ 36-40 [#26]. The Oliver Defendants have moved to dismiss the crossclaims for intentional interference. James Oliver's Motion to Dismiss Counts Two and Three of Webb Defendants Cross Claims [#52]; Barbara Forth's Motion to Dismiss Counts Two and Three of Webb Defendants Cross Claims [#58]; David M. Oliver's Motion to Dismiss Counts Two and Three of Webb Defendants Cross Claims [#61]. The Webb Defendants dismissed their crossclaim against the Oliver Defendants for rescission, Notice of Voluntary Dismissal as to Count III [#76], but the motions to dismiss otherwise remain pending.

3

Crossclaim of James Oliver ¶¶ 12-13, 20 [#37].

Paul Webb, III, is a resident of Pennsylvania. Complaint ¶ 7; Answer and Crossclaim of Webb Defendants ¶ 7 [#26]. Thomas Webb is a resident of Florida. Complaint ¶ 8; Answer and Crossclaim of Webb Defendants ¶ 8 [#26]; Affidavit of Thomas J. Webb ¶ 3 [#94]. David Oliver and Carol Lee Oliver are residents of Massachusetts. Complaint ¶¶ 3, 6; Answer and Crossclaim of David Oliver ¶ 2 [#40]; Am. Answer and Crossclaim of Carol Oliver ¶ 1 [#38]. James W. Oliver is a resident of Connecticut. Complaint ¶ 4; Am. Answer and Crossclaim of James Oliver ¶ 1 [#37]. Barbara Forth is a resident of California. Complaint ¶ 5; Am. Answer and Crossclaim of Barbara Forth ¶ 1 [#39].

### B. MetLife, the Decedent's Life Insurance, and the Beneficiary Designation Forms

MetLife is an insurance company with its principal place of business in New York, N.Y. Compl. ¶ 2. MetLife alleges that the Decedent had group life insurance coverage under an employee benefit plan (the "Plan") maintained by General Electric Company. The Plan gives a Plan participant the right to name his beneficiary, id. ¶ 15, and was administered in Schenectady, New York. See Beneficiary Life Insurance Claim Forms 2 [#1-8] (listing the address for "GE Live Insurance Claims" in Schenectady, New York); Letter from James Oliver to GE Survivor Support [#1-9]; Letter from James Oliver to MetLife [#1-10]. According to the Beneficiary Designation forms submitted with the Complaint, in December 2003, the Decedent, then a resident of Niskayuna, N.Y.,[6] designated his wife Anne Webb as his sole beneficiary for the life insurance benefits at issue here. December 2003 Beneficiary Designation Form [#1-6]; see also Complaint ¶ 20 [#1]. In April 2014 and June 2014, the Decedent, still at the same residence,

---

[6] Niskayuna in a town in Schenectady county.

designated the Oliver Defendants as his beneficiaries for these benefits.[7] June 2014 Beneficiary Designation Form [#1-4]; April 2014 Beneficiary Designation Form [#1-5]. On December 1, 2015, the Decedent, still listing his address as New York, designated the Webb Defendants as his beneficiaries of the life insurance benefits. December 2015 Beneficiary Designation Form [#1-3].[8]

### C. Further Allegations Relating to the Insurance Dispute

The Oliver Defendants contend that, while residing in New York in 2013, the Decedent was diagnosed as suffering from cognitive insufficiency. See e.g. Am. Answer and Crossclaim of James Oliver ¶ 17 [#37]. They contend that he still had the necessary mental capacity to know and understand the legal import of what he was signing in June 2014, but that during 2015 he continued to experience an increased mental decline, and by late fall 2015, he lacked the ability to engage in complex or abstract reasoning. Id. ¶¶ 24-30. The Oliver Defendants contend that David Oliver contacted Paul Webb, III, and notified him of the Decedent's continued mental and physical decline and the need to explore the option of placing the Decedent in a long-term care facility. Id. ¶¶ 32-33.

The Oliver Defendants allege further that Paul Webb, III, "appeared unannounced" at the Decedent's home in New York in October 15, 2015, and, under the pretense of taking his father to lunch, brought the Decedent to a hotel where, by making untrue statements about the Oliver Defendants, he convinced the Decedent to execute a new power of attorney naming Thomas Webb as attorney-in-fact. Id. ¶¶ 18, 35-42. They allege that, shortly thereafter, the Webb

---

[7] The April 2014 designation was submitted by David Oliver as Power of Attorney. April 2014 Beneficiary Designation Form [#1-5]; see also Complaint ¶ 19 [#1].

[8] The Decedent's address on the last form is the same as the earlier form, except that the city is listed as Schenectady, while each of the earlier forms identified the city as Niskayuna.

Defendants arranged for the Decedent to be moved to Florida. Id. ¶ 50.

The Webb Defendants contend that they learned that David Oliver had been making plans for the Decedent to move into an assisted living facility and that medical examinations that were conducted on the Decedent for admission reflected that he was clearly cognizant and had full mental capacity needing minimal care. Answer and Crossclaim of Webb Defendants ¶ 15 [#26]. The Webb Defendants contend that, when they discussed these plans with the Decedent, he opposed them, and expressed a desire to live in Florida rather than in an assisted living facility. Id. ¶ 16. The Webb Defendants contend that the Decedent executed a power of Attorney in New York on October 15, 2015, appointing Thomas Webb to handle the Decedent's affairs. They contend further that on October 16, 2015, the Decedent moved to Florida, where on October 23, 2015, he executed estate planning documents through a local attorney, and on December 1, 2015, signed the most recent Beneficiary Designation Form. Id. ¶¶ 17-19, 27.

The Decedent died on February 7, 2019, at an assisted living facility in Florida. See Certification of Death [#1-2].

   IV. Analysis

Defendant James Oliver asserts that the Northern District of New York is the most appropriate venue for this matter. Mot. to Transfer to NY [#42]. The Webb Defendants oppose transfer to the Northern District of New York, contending that this action could not have originally been brought there, or, in the alternative, that the Northern District of New York is not the most appropriate venue. Opp'n to Mot. to Transfer to NY 2 [#48]. They move, instead, for a transfer to the Middle District of Florida. Mot. to Transfer to FL 4-5 [#50]. The Olivers oppose a transfer to Florida.[9] See Objection of James Oliver [#74].

---

[9] No party contends that venue is improper in the District of Massachusetts and, as responsive

6

Both motions to transfer venue are brought under 28 U.S.C. § 1404(a). Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

### A. Districts Where the Action Might Have Been Brought

The threshold question here is whether this action "might have been brought" in either the Northern District of New York or the Middle District of Florida.

MetLife described this action as a Complaint in Interpleader [#1], and alleged that the action arises under the civil enforcement provisions of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1132(e),[10] "is an interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure," and is an interpleader action pursuant to 28 U.S.C. § 1335 because two or more adverse claimants of diverse citizenship[11] are claiming entitlement to life insurance proceeds in MetLife's custody the value of which exceeds five hundred dollars ($500.00). Compl. ¶ 9.

#### a. Statutory Interpleader

This action was properly filed as a statutory interpleader action. "Statutory interpleader [] has three jurisdictional requirements: 1) the amount in controversy must be $ 500 or more; 2) the

---

pleadings have been filed, any such claim has been waived. See Fed. R. Civ. P. 12(b).

[10] MetLife alleges, and all Defendants admit, that the Plan is regulated under ERISA. Complaint ¶ 1 [#1]; Answer and Crossclaim of Webb Defendants ¶ 1 [#26]; Answer and Crossclaim of David Oliver ¶ 1 [#40]; Am. Answer and Crossclaim of Carol Oliver ¶ 1 [#38]; Am. Answer and Crossclaim of James Oliver ¶ 1 [#37]; Am. Answer and Crossclaim of Barbara Forth ¶ 1 [#39].

[11] See State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530 (1967) (holding that 28 U.S.C. § 1335 "has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens"). This requirement is met here. See Compl. ¶¶ 3-8.

two or more adverse claimants claiming entitlement to the amount in controversy must be of diverse citizenship; and 3) the plaintiff must deposit either the amount at issue, or an appropriate bond, with the court." Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc., 368 F. Supp. 3d 460, 484 (E.D.N.Y. 2019) (internal quotations omitted). These requirements have been met here. See Compl. ¶¶ 3-9, 21-22; Stip. and Ord. Regarding Deposit of Funds and Discharge of Plaintiff [#93].

A statutory interpleader action "may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. The Webb Defendants contend that word "may" here is properly construed as introducing a mandatory condition. Opp'n to Mot. to Transfer to NY 3 [#48]. Courts nationwide have differed on whether the use of the word "may" here is mandatory or permissive, and there is no precedent binding this court.[12] Nonetheless, the Oliver Defendants concede that the statute is mandatory rather than permissive, Objection to Mot. to Transfer to FL 2 [#74], and accordingly, the court treats the term "may" as mandatory, to the extent that venue is based solely on the statutory venue provision. Since none of the

---

[12] The weight of authority indicates that "may," in this context, is mandatory. See e.g. Wells Fargo Bank, N.A. v. Caballero, 2020 WL 907544, at *4 (D.S.D. Feb. 25, 2020) ("This court agrees with the Third Circuit Court of Appeals and the majority of the district courts" that "may" means "must" or "shall".); see also 19 A.L.R. Fed. 166 (Originally published in 1974) ("[R]esidence of the defendant claimants controls [venue for a statutory interpleader action] . . . . Rule 22 interpleader may therefore be more advantageous than statutory interpleader, since the party seeking interpleader in a Rule proceeding may always bring the action in the district of his residence, even if none of the parties which he seeks to interplead is a resident of his district— something which would not be possible in a statutory interpleader action where the residence of the parties to be interpleaded is controlling"); Osis v. 1993 GF P'ship, L.P., 2000 WL 840050, at *3 (D. Conn. Mar. 31, 2000)("the word may as used in section 1397 should be construed as shall or must"); but see Mark E. Mitchell, Inc. v. Charleston Library Soc., 114 F. Supp. 2d 259, 263 (S.D.N.Y. 2000) (stating § 1397 "merely permits venue in an interpleader action to be laid in a district in which a claimant resides. It does not limit venue to such a district"); Doe v. Ejercito de Liberacion Nacional, 2015 WL 9077344 at *3 (S.D.N.Y. Dec. 16, 2015) ("[w]hile no claimant resides in New York, this does not end the analysis, as courts in the Southern District have held that the use of 'may' (rather than 'must') ... is intended to expand, rather than limit ... § 1391").

Defendants reside in the Northern District of New York, but Defendant Thomas Webb is a resident of Orlando, Florida, see Affidavit of Thomas J. Webb ¶ 3 [#94], venue under 28 U.S.C. § 1397 is proper in the Middle District of Florida, but not in the Northern District of New York. The court notes further that the interpleader statute also allowed for nationwide service of process, 28 U.S.C. § 2361, and accordingly, there are no concerns as to whether there would have been personal jurisdiction if the action was brought in the first instance in the Middle District of Florida.

      b. Rule Interpleader

The action was also properly brought as a Rule Interpleader action. In a rule interpleader action, appropriate venue is controlled by the general venue provision, 22 U.S.C. § 1391, unless a more specific venue provision applies. See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 55 n.2 (2013). Where, as here, the court's jurisdiction over the rule interpleader action is based on federal question jurisdiction over the underlying ERISA claim, venue lies "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The plan at issue in this case appears to have been administered in Schenectady, New York, see Beneficiary Life Insurance Claim Form [#1-8], and accordingly, venue would be proper in the Northern District of New York. And again, because Defendant Thomas Webb is a resident of Orlando, Florida, see Affidavit of Thomas J. Webb ¶ 3 [#94], venue under 28 U.S.C. § 1397 is also proper in the Middle District of Florida.

The court notes further that ERISA allows for nationwide service of process, 29 U.S.C. § 1132(e)(2), and accordingly, there are no concerns as to whether there would have been personal jurisdiction if the action was brought in the first instance in either the Northern District

of New York or the Middle District of Florida.

        c. <u>This Case Might Have Been Brought in Either Florida or New York</u>

This case is properly brought both as an action in statutory interpleader and rule interpleader based on an ERISA claim. It therefore "might have been brought" in the Middle District of Florida both as a statutory and rule interpleader action and also "might have been brought" in the Northern District of New York as a rule interpleader action. Neither party has provided support for the contention that, in order to transfer venue, this case must have been capable of being filed in the transferee district as both a rule and statutory interpleader action, and the court sees no reason why that should be the case. As such, this action might have been brought in both the Northern District of New York and the Middle District of Florida.

    B. <u>The Most Appropriate Venue</u>

Having determined that this action "might have been brought" in either the Northern District of New York or the Middle District of Florida, the court must next "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" <u>Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas</u>, 571 U.S. 49, 63 (2013) (quoting 28 U.S.C. § 1404(a)). The court may consider factors relating to the parties' private interest as well as to the public interest.[13] <u>Id.</u> at 62 n.6. The factors most relevant

---

[13] Private interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas</u>, 571 U.S. 49, 63 (2013) (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241, n. 6 (1981)). Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id.</u> (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241, n. 6 (1981)).

to the case at bar are addressed below.

### a. Availability of and Access to Witnesses

James Oliver contends that the Decedent's alleged lack of capacity in October 2015, prior to moving from New York to Florida, is central to the dispute and proof thereof will entail testimony of numerous Schenectady and Albany-based witnesses who could not be compelled to appear at trial in a Massachusetts or Florida district court. Mem. in Supp. of Mtn. to Transfer to NY 6, 9-11 [#43]; see also Fed. R. Civ. P. 45(c)(1). Anticipated witnesses include the Decedent's long-time physician Dr. Steven Goldberg, care provider Ellen Bleja, friend Alan Yerdon, neighbor Sally Knutson, and personal helper Jeanie Bunnecke, as well as attorney Amy Robinson and her paralegal, Lori Mayo, who assisted the Decedent with, inter alia, the June 2014 Beneficiary Designation. Mem. in Supp. of Mtn. to Transfer to NY 6, 8-10 [#43]. Testimony regarding the events of October 15 and 16, 2015, when the Decedent executed a new power of attorney and left New York based on the Webb Defendants' purported undue influence, is expected from additional New York-based witnesses including Town of Niskayuna police officer Cathy Forth and attorney Robert Frost. Id. at 7. The "court appointed neutral" in a subsequent New York State guardianship proceeding, attorney Erin Hayner, remains based in New York and will likely be called to testify about the interview she conducted with the Decedent in November 2015 shortly prior to his execution of the most recent beneficiary designation on December 1, 2015. Id.[14]

The Webb Defendants do not dispute that non-party witnesses to the events leading up to

---

[14] Defendant James Oliver also contends that MetLife employees may be called as witnesses in support of his defamation claim relating to letters sent by Webb Defendants to the MetLife office in New York. Mem. in Supp. of Mtn. to Transfer to NY 10-11 [#43]. In light of the unresolved motion to dismiss this claim, the court reaches its determination on the venue question without considering the additional New York-based witnesses offered in support of the defamation claim.

11

and on October 15 and 16 are in New York. They argue, however, that the "the primary issue to be determined" is whether the December 1, 2015 Beneficiary Designation is valid and enforceable, Opp'n to Mtn. to Transfer to NY 4 [#48], and that "the relevant time period is when the Decedent executed the change of beneficiary form in December 2015 while he was residing in Florida." Id. Thus, they contend, the witnesses identified by Defendant James Oliver are not relevant because they only "have information regarding the Decedent's mental capacity as of October 15, 2015 when the Decedent left the State of New York."[15] Id. (internal quotations omitted). This argument, however, ignores entirely the Oliver Defendants' claims of undue influence.

The Webb Defendants state further that between October 2015 and February 2019, while living in Florida:

> Decedent saw and received ongoing care from numerous physicians and doctors, including a geriatric doctor in Orlando and physician in St. Cloud. The Decedent was also under the continuous care of health care professionals who took care of his daily hygiene needs, and other service workers who provided housekeeping and meals for the Decedent. The Decedent also visited with numerous lawyers and bank executives relating to his estate and financial matters after he relocated to the State of Florida (Paula Montoya, Esq., Kristen Jackson, Esq. and Florida Trustco bank officers).

Mot. to Transfer to FL 4 [#50]. The Webb defendants contend that "[a]ll of these individuals have information that would assist the trier of fact in determining whether the Decedent had capacity when he changed the beneficiary on the life insurance policy in December 2015." Id. The court acknowledges that witnesses with whom the Decedent interacted regarding matters related to his estate and finances while he was in Florida during the period leading up to and around December 1, 2015, may well have relevant information. Testimony as to the Decedent's

---

[15] Webb Defendants further argue, without support, that laypersons cannot provide useful testimony on the question of competence. Opp'n to Mtn. to Transfer to NY 5 [#48].

12

capacity months or years after the execution of the allegedly superseding beneficiary designation may still be of some value if the Decedent had full mental capacity through that period, but is of little value, without any dates as to the interactions, if his mental capacity changed.

Although there are therefore witnesses in both jurisdiction who may have relevant information, the court finds that the convenience of parties and witnesses and the interest of justice weigh in favor of New York. Witnesses there include both the Decedent's long-time doctor and the New York based "court-appointed neutral," who evaluated the Decedent's capacity as late as November 2015. These witnesses are likely to have the most relevant information as to the Decedent's capacity in the critical time period. Evidence of any undue influence, and the events of October 15 and 16, is available only in New York. Finally, evidence relating to earlier-executed beneficiary forms and the Plan administration is also located in New York.

      b. <u>Local Controversies and Governing Law</u>

Defendant James Oliver contends that New York State has a significant interest in adjudicating this case because of the Decedent's long residence in the state, the various relevant events that occurred there, and the fact that the life insurance plan at issue is administered by a New York-based company.[16] Mem. in Supp. of Mtn. to Transfer to NY at 12-13 [#43]. Moreover, he argues New York state law will likely control the definitions of "capacity" and "undue influence," based on the principle of *lex loci delicti*[17] because the events surrounding the

---

[16] He also notes two ongoing actions being litigated in New York with some or all of the same parties. Mem. in Supp. of Mtn. to Transfer to NY at 13-14 [#43]. He does not, however, contend that this action could or should be consolidated with either. The court finds the additional litigation in New York does not factor in to the venue analysis.

[17] "The traditional choice-of-law rule applicable to multistate tort litigation is that the law of the place of the tort, or lex loci delicti, governs all matters going to the basis of the right of action or affecting the substantive rights of the parties. Under this rule, the law of the place of the tort, or

13

Decedent's departure from New York occurred in that state.[18] The Webb Defendants do not contend that Florida law would control, but do note that Florida "has a large number of elderly persons residing in the State and thus, the judiciary in the State of Florida is well-equipped to deal with the ongoing and continuous issues that arise regarding its elderly – including determining capacity and/or undue influence issues." Mot. to Transfer to FL 5 [#50]. They further note that the Decedent's "residency in the State of Florida provides a local interest to have the controversy resolved at home." Id.

The court finds that the Decedent's residence in Florida in the last few years of his life provides little local interest where the Decedent was a life-long resident of New York until his October 2015 move to Florida. Indeed, the Decedent identified New York, and not Florida, as his address in the December 2015 Beneficiary Designation form at issue. Having weighed the relevant factors, the court finds, on a close question, that the most appropriate venue is the

---

the law of the place where the injury occurred, determines liability. In other words, tort cases are governed by the substantive law of the state where the tort, injury, or wrong occurred." 16 Am. Jur. 2d Conflict of Laws § 104. However, "[a] majority of the states have now abandoned the lex loci delicti rule in favor of the most significant relationship rule set forth by the Restatement. Under the Restatement rule, the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the general conflict-of-laws principles The contacts which are to be considered, taking into account their relative importance with respect to the particular issue, include (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered... Ordinarily, choice-of-law determinations are made on an issue-by-issue basis, with each issue receiving a separate conflict-of-law analysis. Under the most significant relationship approach, the laws of a single state do not necessarily govern all substantive issues, and the courts must consider each issue separately and apply the state law having the most significant relationship to the issue." 16 Am. Jur. 2d Conflict of Laws § 107.

[18] He argues further that the allegedly tortious defamation by Webb Defendants and the allegedly tortious interference with inheritance by Oliver Defendants are based on letters sent to MetLife in New York. Id. at 14-17. As noted above, the court has not considered the additional tort claims that are the subject of pending motions to dismiss in evaluating the venue question.

14

Northern District of New York.

V. Conclusion

For the foregoing reasons, the Motion to Transfer Venue [#42] to the Northern District of New York is GRANTED and the Motion to Transfer Venue [#50] to the Middle District of Florida is DENIED.

IT IS SO ORDERED.

Date: October 16, 2020                                         /s/ Indira Talwani
                                                                                United States District Judge